[Civ. No. 19349.   Second Dist., Div. One.   Feb. 4, 1953.]

MURRAY METZENBAUM, Respondent, v. WALTER METZENBAUM, Appellant.

Newell & Chester for Appellant.

Milton A. Krug for Respondent.

PATROSSO, J. pro tem.—Motion by respondent to dismiss appeal of defendant Walter Metzenbaum.

This is but another chapter in the prolonged and bitter litigation between these parties.   (See *Metzenbaum* v. *Metzenbaum*, 86 Cal.App.2d 750 [195 P.2d 492]; *Metzenbaum* v. *Metzenbaum*, 96 Cal.App.2d 197 [214 P.2d 603]; and *Metzenbaum v. Metzenbaum, ante,* p. 395 [252 P.2d 31, 966] 2d Civil 19045, decided by this court January 16, 1953.)

The present appeal which is sought to be dismissed is from the judgment rendered in three separate actions instituted

by the plaintiff which were consolidated for trial and which were disposed of by a single set of findings and judgment.

In the first of these, Walter Metzenbaum and Fanchon Metzenbaum were named as defendants and plaintiff thereby sought recovery of damages for the malicious prosecution of a civil action. The second action against the same defendants was for the malicious prosecution of a different civil action, and the third was directed against Walter Metzenbaum and Rose Metzenbaum to set side as fraudulent a conveyance by Walter to Rose of all of the former's right, title and interest in and to a partnership formerly existing between plaintiff and Walter then in the process of liquidation, including Walter's interest as such former partner in two certain oil royalties known as the Oulton and Surfluh or Rozier royalties. The trial court found the facts generally as alleged in plaintiff's complaints; that the actions in question were maliciously prosecuted; that as a result thereof plaintiff had sustained damage in the sum of $20,000, and that the conveyance in question by Walter to Rose was fraudulent and void as "against plaintiff and as against the plaintiff's claims against Walter Metzenbaum in the sum of $20,000.00," being the amount of the judgment appealed from.

On March 6, 1952, notice of appeal from the judgment was filed on behalf of defendant Walter and Rose by the firm of Newell & Chester who at all times during the pendency of the litigation in the court below were attorneys of record for said defendants and who appear for them here. On March 7, said defendants, through the same counsel, filed a notice requesting preparation of reporter's and clerk's transcripts for use upon the appeal. Thereafter, on April 15, upon an ex parte application therefor by the same counsel, an order was obtained extending the time for the payment of the reporter's fees for the preparation of the transcript for a period of 30 days, and on May 16, 1952, pursuant to a motion made by the same attorneys on behalf of the defendants, a further extension of 30 days was obtained for the payment of the reporter's fees. Thereafter, the reporter's transcript, which is in three volumes containing in excess of 800 pages, was prepared, duly certified and filed in this court.

The motion to dismiss is based upon two grounds: (1) that prior to the time that counsel obtained the two orders above mentioned extending the time for the payment of the fees of the reporter their authority to act for the defendant Walter Metzenbaum had been terminated, and (2) that defendant

Walter Metzenbaum waived or renounced his right to appeal by reason of the fact that he "has sought to enforce a portion of the said judgment pending this appeal." We shall consider these contentions in their inverse order.

The Bank of America at Fresno, California, was the escrow agent appointed to receive and disburse monthly to various parties, in proportion to their respective interests, royalties accruing to the lessors and those claiming under them from oil and gas produced and sold from the Surfluh property which has heretofore been referred to as the Surfluh or Rozier royalty. The interest therein of the former partnership of plaintiff and defendant Walter stood in the name of plaintiff alone and his one-half interest therein had been distributed to him. The remaining one half of the partnership interest, however, was subject to a pending action in interpleader instituted by the plaintiff herein as liquidating partner against various persons who asserted an interest therein or thereto. Following the entry of the judgment in the instant action, the defendant Walter addressed a letter to the bank to which reference will hereinafter be made and it is the statements contained in this letter which plaintiff asserts constitute an attempt by Walter to enforce the judgment herein or an "acceptance of the benefits" thereof. The letter in question, dated April 3, 1952, insofar as material here, reads as follows:

"Recently a decision was rendered in the Superior Court of Los Angeles County—Judge Smith presiding—in which it was held that my conveyance of Rozier Royalty was null and void and the conveyance was set aside.

"This only refers to that portion of the Rozier Royalty set up on your books in the name of Rose Metzenbaum and to no other portion of the Rozier Royalty. It specifically does not refer to the Rozier Royalty owned by Murray Metzenbaum or by Victor Metzenbaum—it is confined to the Rozier Royalty that are heretofore conveyed to Rose Metzenbaum.

"You will therefore set up this interest and no other in your books in my name instead of in the name of Rose Metzenbaum. I am cognizant of the fact that all receipts by the partnership of myself and Murray Metzenbaum are now and have for sometime been going to Murray Metzenbaum as liquidating partner.

"Legal steps will now be taken to close the estate so that further distributions of receipts will be made to myself and others entitled."

774

At the outset we observe that we see nothing in this letter which suggests, much less states, that Walter thereby manifested his intention to waive or abandon his right to appeal from the judgment rendered against him in the instant case. ▪▪▪ We likewise fail to read therein an acceptance of any "benefits" of the judgment by Walter, and are at a complete loss to understand how it can be construed as attempt upon his part to enforce the judgment appealed from.

The letter merely purports to set forth his understanding of the judgment rendered against him, and it is apparent that he was under a misconception as to the legal effect thereof. ▪▪▪ Although the judgment decreed that Walter's purported assignment to Rose of his interest in the Surfluh or Rozier royalty was fraudulent as to the plaintiff, this did not affect the validity of the assignment as between the parties thereto. (12 Cal.Jur. p. 1022, § 63.) Therefore, despite the judgment, whatever interest in the royalty in question originally belonged to Walter was as effectively vested in Rose as though the judgment had not been rendered. How then can it be said that requesting the bank to change the entry upon its books so as to show that Walter was the owner of the royalty rather than Rose constitutes an acceptance of any benefits under the judgment appealed from? ▪▪▪ Not only is it made to appear that Rose did not appear on the books of the bank as the owner of any interest in the royalty in question, but it is manifest that no benefits under a judgment accrue to one who makes an unfounded claim thereunder.

The other ground of the motion to dismiss is even less meritorious. It is predicated in its entirety upon the letter to the bank previously referred to. In addition to the matter previously quoted therefrom, the letter proceeds to criticize counsel of record for the defendants herein by reason of their failure to successfully defend the action, and contains language which respondent construes as expressing an intent upon the part of the defendant to discharge them and appear in his own behalf. Assuming, without undertaking to decide, that the language of the letter is subject to the construction suggested, there is absolutely no showing that Walter ever made his intentions in this regard known to his attorneys. Moreover, whatever may have been his intention in this regard at the time of the addressing of the letter to the bank, he was at complete liberty thereafter to change his mind if he so desired. We hardly believe that anyone would undertake to assert that because a client addresses a letter to a third person

in which he complains of the manner in which his counsel represented him in a particular case and states that he has or intends to discharge him, thereby the discharge becomes effective and the authority of the attorney terminates in the absence of any communication to this effect from the client to the attorney. ■ Assuming, as respondent asserts, that the communication to the bank was tantamount to notice to the plaintiff because the bank as escrow holder "was agent for both parties," we do not apprehend that because a party to pending litigation states to his adversary that he intends to discharge his attorney of record therein that this without more operates as a discharge of such attorney. Section 284, Code of Civil Procedure, prescribes the method by which a party may change his attorney of record in a pending action or proceeding, and section 285 of the same code reads as follows: "When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then he must recognize the former attorney."

Here there is no claim that the attorneys of record for the defendants were substituted out of the case in the manner prescribed by section 284. The letter to the bank therefore was wholly ineffectual to accomplish this result.

If nothing more were made to appear we would have no difficulty in concluding that the letter in question did **not** operate as a discharge of defendants' counsel of record herein. In addition, however, there has been filed in this court an affidavit by the defendant Walter wherein he deposes that at all times since he authorized the taking of the appeal, Newell & Chester have been and still are his attorneys and authorized to prosecute said appeal upon his behalf.

The motion to dismiss is denied.

Doran, Acting P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied March 2, 1953, and respondent's petition for a hearing by the Supreme Court was denied April 2, 1953.